Filed 3/1/23  P. v. Kness CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALLEN REED KNESS,<br><br>    Defendant and Appellant. | 2d Crim. No. B317045<br>(Super. Ct. No. F000278122)<br>(San Luis Obispo County) |

Allen Reed Kness appeals an order denying his petition for resentencing pursuant to Penal Code[1] section 1172.6 (former section 1170.95[2]).  Kness contends, and the Attorney General concedes, the trial court improperly applied a sufficiency of the evidence standard of proof at his evidentiary hearing under section 1172.6, subdivision (d)(3).  We accept the concession and

---

[1] Further unspecified statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)

conclude the error is not harmless. It is unknown whether the jury convicted Kness of second degree murder liability on a natural and probable consequences theory, which Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) eliminated. We reverse so that the trial court can sit as the fact finder and determine beyond a reasonable doubt whether Kness is guilty of murder under sections 188 and 189.

## FACTS AND PROCEDURAL HISTORY

### *Murder and investigation*[3]

In 1998, 45-year old Richard Wall lived with Blaine Richardson, who was 22 years old and stronger than Wall. Wall was physically weak because he suffered from emphysema and liver disease. Wall and Richardson argued frequently.

Kness did not know Wall but was good friends with Richardson. Kness and Richardson spent the day together drinking. Richardson told Kness that Wall was an "asshole" and that he was going to "take [Wall] out." Kness said he would "back [Richardson] up." The two of them walked back to Wall's apartment, where Wall was drinking beer and watching television.

Richardson and Kness continued to drink at the apartment. Kness told Wall, "Don't fuck with this guy or I'll kill you." At some point in the evening, Richardson began arguing with Wall and stabbed him several times in the bedroom.

After Wall was killed, Kness placed salad tongs on Wall's back and urinated on him. Kness and Richardson took money

---

[3] The facts come from the unpublished opinion we issued in 2001. (*People v. Kness* (May 7, 2001, B139989 [nonpub. opn.] (*Kness I*).)

from Wall's wallet, bought more beer, and returned to the apartment where they drank and watched a video before passing out.  Richardson and Kness left the apartment the next morning.

Wall's body was discovered by a neighbor and manager of the apartment complex.  He had been stabbed six times with two different knives and had blunt force injuries on his scalp and torso.  The fatal injury was a stab wound to Wall's neck.  Police discovered two knives in the kitchen that could have produced Wall's injuries.  One of the knives had a bent blade and appeared to have been washed.  Kness's fingerprints were found on a drinking glass in the kitchen, but not on the knives; Richardson's fingerprints were found throughout the apartment.

Kness was arrested the next day, and Richardson turned himself in.  Richardson initially told the police that Kness had killed Wall.  A police officer placed Kness and Richardson together in a patrol car and recorded their conversation.  Richardson said he turned himself in for questioning because he "figured [the police] would stick [Kness] with everything."  Kness responded, "If you remember right, I was the one that was trying to get you out of it.  Like before we passed out, I was trying to dump the body."

Kness also said that "pathologists" already examined the apartment and the police already knew "what went down."  He also said the police already had their fingerprints in the apartment and "they pretty much know . . . how it happened or what happened."  Richardson replied, "There's only two missing elements.  I asked for the knife, you got em and I killed him.  I swear to God, that's exactly what happened, and you were just standing there, remember?  That's exactly what happened."  Kness responded, "Hm."  Richardson continued, "And I said get

3

me a different one Allen, you got me a different one.  Then you like kicked him, put tongs on him, did weird things, you peed on him [and] then you told me to pee on him."  Kness said "it's pretty much cut and dried . . . you know, we're going to prison  [¶] . . . [¶]  [c]ause now, that you told them that I did bring you the knife, I'm accessory to murder."

Richardson pleaded guilty to second degree murder and admitted he personally used a knife.  At Kness's trial, Richardson testified that Kness had been in the living room when Richardson stabbed Wall in the bedroom.  Richardson acknowledged Kness had done strange things after the killing, such as urinating on the body, but testified that Kness did not bring him the knives and did not otherwise participate in the murder.

*Trial proceedings and prior appeals*

The trial court instructed the jury that Kness could be convicted of murder on two theories: first, as a direct aider and abettor, and second, under the natural and probable consequences doctrine with the target crimes of (1) brandishing a deadly weapon, (2) simple assault, or (3) assault with a deadly weapon.  The prosecution argued both theories of murder.  Kness denied any involvement in killing Wall, including providing Richardson with knives.  The jury was instructed: "One who aids and abets [another] in the commission of a crime, is not only guilty of that [that crime], but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted."

The jury found Kness not guilty of first degree murder.  It convicted Kness of second degree murder (§§ 187, subd. (a), 189, subd. (b)), but did not specify whether the conviction was based on direct aiding and abetting or the natural and probable

4

consequences doctrine. It also did not find true the allegation that Kness personally used a deadly weapon. (§ 12022, subd. (b).) Kness was sentenced to 15 years to life in state prison. In *Kness I*, we affirmed the judgment in an unpublished decision. (*Kness I*, *supra*, B139989.)

Following the enactment of Senate Bill 1437, Kness filed a resentencing petition alleging he was prosecuted for and convicted of murder under a theory of felony murder or murder under the natural and probable consequences doctrine and could not now be convicted of murder. The trial court denied the petition on constitutional grounds. In *Kness II*, we reversed and remanded the matter to the trial court to conduct further proceedings consistent with section 1172.6. (*People v. Kness* (August 24, 2020, B299645) [nonpub. opn.] (*Kness II*).)

*Section 1172.6 proceedings*

On remand, the trial court found Kness established a prima facie showing of eligibility for relief and set a hearing.[4] At the hearing, the court denied the petition, stating "there is *substantial evidence* that supports a murder conviction based on direct aiding and abetting." (Emphasis added.) In so ruling, the court indicated it reviewed the parties' briefs, "the entire case file, the instructions that were given at trial, the verdicts that were reached" and "the transcripts of this case consisting of well over 500 pages."

The court applied the following standard: "In this hearing, the prosecution must show that a reasonable jury could find the defendant guilty of murder with the requisite mental state for murder. This is essentially identical to the standard of

---

[4] It is unclear whether the hearing was a "second prima facie" hearing or an order to show cause hearing.

5

substantial evidence, in which reviewing courts ask whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. That's based on People vs. Ochoa, 1993, 6 Cal.4th 1199; People vs. Duke, 2020, 55 Cal.App.5th 113. [¶] A review of the record shows that a reasonable jury could still convict Mr. Kness of murder as a direct aider and abettor to murder or by conduct that endangers the life of another and by acting with conscious disregard for that life."

The court summarized the supporting evidence that "could" support Kness's second degree murder conviction, including an "agreement" between Kness and Richardson when Richardson expressed his desire to " 'take out' the victim" and Kness responding that he would " 'have his back' . . . 'on this.' " The court also mentioned evidence of Kness providing one or more knives during the assault on Wall, including incriminating statements made during the recorded conversation. The court further noted Kness's conduct after the murder, including urinating on Wall, placing tongs on him, and taking money from his wallet. The court found Kness "could be convicted as a direct aider and abettor based on the evidence presented."

The trial court concluded "there is substantial evidence that supports a murder conviction based on direct aiding and abetting. . . . Therefore, the defendant has not made a showing, a prima facie showing, and the People have shown beyond a reasonable doubt that the defendant is a person who could presently be convicted of murder as a result of the changes to Section 188."

DISCUSSION

Kness contends the trial court erred in denying his resentencing petition because the trial court (1) relied upon our

6

statements in a prior opinion; (2) applied a sufficiency of the evidence standard of proof at his evidentiary hearing, thus failing to prove his ineligibility for relief beyond a reasonable doubt, and (3) deprived him of his state and federal due process rights. For reasons we explain below, we reverse and remand the matter to the trial court for an evidentiary hearing.

*Senate Bills 1437 and 775*

Senate Bill 1437 amended section 188 to provide that "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2.) Our Supreme Court has concluded that "Senate Bill 1437 eliminates natural and probable consequences liability for murder regardless of degree." (*People v. Gentile* (2020) 10 Cal.5th 830, 847-848 (*Gentile*).)

Additionally, Senate Bill 1437 enacted section 1170.95 (now § 1172.6), which provides a procedure for those convicted of murder under the natural and probable consequences doctrine to petition to vacate the conviction. (Stats. 2018, ch. 1015, § 4; *Gentile*, *supra*, 10 Cal.5th at p. 843; § 1172.6).) Upon receipt of a petition under section 1172.6, the trial court must appoint counsel, allow briefing, and then determine if the petitioner has made a prima facie showing that "[t]he petitioner could not presently be convicted of murder or attempted murder" under the amendments to sections 188 and 189 enacted under Senate Bill 1437. (§ 1172.6, subds. (a)(3), (b), (c).)

When, as here, the petitioner has carried the burden of making the requisite prima facie showing they fall within the provisions of section 1172.6, the court shall issue an order to

7

show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c), (d)(1).)

Effective January 1, 2022, the Legislature enacted Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) (Senate Bill 775), which amended section 1170.95, subdivision (d)(3), to provide: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt" that the petitioner is ineligible for resentencing.  In addition to clarifying the standard of proof a trial court must apply at the evidentiary hearing, subdivision (d)(3) specifies the type of evidence the trial court may consider.  "The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. *A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.*"  (§§ 1170.95, subd. (d)(3), 1172.6, subd. (d)(3), emphasis added.)

*Consideration of prior appellate opinion on direct review*

Kness argues the trial court erred when it relied upon statements in our prior appellate opinion to conclude the jury "could" have found him guilty as a direct aider and abettor.  We disagree with Kness's characterization.  As the trial court noted, any consideration of the prior appellate opinion was "somewhat irrelevant" because it read the transcripts in the case and the parties' arguments.  It did not "see anything in the Court of Appeal opinion that is inconsistent with what [it] reviewed in the transcripts of the case itself."

8

A trial judge may "consider the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3).) Subdivision (d)(3) arguably limits consideration of an appellate court opinion to procedural history and not factual summaries. At least one court has held that a judge should not rely upon the factual summaries contained in the prior appellate opinion "when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing." (*People v. Clements* (2022) 75 Cal.App.5th 276, 292 (*Clements*).)

Here, the trial court did not rely upon the factual summaries in our prior opinion or give it conclusive effect. Rather, the court reviewed the parties' briefs, "the entire case file, the instructions that were given at trial, the verdicts that were reached" and "the transcripts of this case consisting of well over 500 pages" to reach its conclusion. (See *Clements*, *supra*, 75 Cal.App.5th at p. 293 [no error where trial court admitted the prior appellate opinion, but did not rely upon it and the trial transcripts supported the factual history set forth in the prior opinion].) Therefore, Kness has not demonstrated the court committed reversible error in referencing our prior opinion.

To the extent Kness argues the trial court was bound by a statement in a prior ruling stating he was convicted on a natural and probable consequences theory, we disagree. After Kness filed his initial resentencing petition in 2018, the trial court issued a ruling denying the petition on constitutional grounds (*Kness II*). In the recitation of the "Procedural Background," the trial court stated that Kness was convicted by a jury "pursuant to a natural and probable consequences . . . theory." However, this one statement is not "law of the case," as Kness argues. It is unknown if the jury convicted Kness under the natural and

9

probable consequences doctrine or direct aiding and abetting, and the trial court did not adjudicate the merits. Therefore, the trial court's one statement in its prior ruling has no preclusive effect. (*People v. Barragan* (2004) 32 Cal.4th 236, 252-253 [conclusive adjudication on issues actually litigated are given preclusive effect].)

*Standard of proof*

Kness argues the trial court improperly applied a sufficiency of the evidence standard of proof at the section 1172.6, subdivision (d)(3) evidentiary hearing. The Attorney General concedes as much but argues the error was harmless. We agree the trial court applied the incorrect standard of proof and conclude the error was not harmless.

At the time the parties submitted their briefs to the trial court, there was a split of authority on whether the trial court should apply a substantial evidence standard of proof, or if the trial court must adjudicate the petition as an independent fact finder, at an evidentiary hearing. The prosecution and the trial court relied upon *People v. Duke* (Sept. 28, 2020, B300430) opn. vacated, cause remanded, and ordered nonpub. Nov. 23, 2021, S265309, sub. opn. *People v. Duke* (Mar. 25, 2022, B300430 [nonpub. opn.]) (*Duke*), to apply the substantial evidence standard of proof. Our Supreme Court resolved the split of authority when it vacated and depublished *Duke*, and the Legislature amended section 1170.95 to clarify that the trial court, acting as an independent fact finder, must determine beyond a reasonable doubt whether a defendant is guilty of murder under a valid theory of murder. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*); Stats. 2021, ch. 551, § 2.)

10

The Legislature also amended the statute to permit *both* parties to submit new or additional evidence at the section 1172.6, subdivision (d)(3) hearing.  (Stats. 2021, ch. 551, § 2.)

Whether Kness committed murder under a still-valid theory, such as directly aiding and abetting murder, is a factual question that must be resolved by the trial court.  (*Clements*, *supra*, 75 Cal.App.5th at p. 294.)  And while section 1172.6 "requires the trial judge to sit as a fact finder, not as a quasi-appellate court" (*Clements*, at p. 295), the trial court here did not make this required factual finding beyond a reasonable doubt.  "The substantial evidence test asks only 'whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves essential facts beyond a reasonable doubt, or by clear and convincing evidence.' [Citation.]."  (*Id.* at p. 294.)  "By contrast, a fact finder tasked with holding the People to the beyond a reasonable doubt standard, 'must impartially compare and consider all the evidence that was received throughout the entire trial, and determine whether that 'proof . . . leaves you with an abiding conviction that the charge is true.' [Citations.]"  (*Id.* at pp. 294-295.)

Here, the trial court relied on *Duke* and improperly applied a sufficiency of the evidence standard "in which reviewing courts ask whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt."  The court denied the petition because "there is substantial evidence that supports a murder conviction based on direct aiding and abetting."  Rather than " 'impartially compare and consider all the evidence,' " "evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt

11

standard" as required under section 1172.6, subdivision (d)(3) (*Clements*, *supra*, 75 Cal.App.5th at pp. 295, 298), the court reviewed the evidence favorable to the prosecution to find it *substantial* to support a still-valid theory of murder.

But only after "the trial court sits as a trier of fact" (*People v. Schell* (2022) 84 Cal.App.5th 437, 442) and makes an independent finding of facts beyond a reasonable doubt, can we meaningfully conduct review of whether there is substantial evidence to support the trial court's factual findings. (*Clements*, *supra*, 75 Cal.App.5th at pp. 295, 298 ["interpreting the statute as directing trial judges to sit as quasi-appellate courts would effectively read the standard of proof out of the provision"].) The court's erroneous application of a substantial evidence standard at the evidentiary hearing is not harmless under either *People v. Watson* (1956) 46 Cal.2d 818, 836 or *Chapman v. California* (1967) 386 U.S. 18, 24. (See *Garrison*, *supra,* 73 Cal.App.5th at p. 747 [assessing harmless error under *Watson* and *Chapman* standards].) The error is not harmless because the prosecution argued multiple theories of murder including a natural and probable consequences theory, and it is unknown if the jury convicted Kness based on the natural and probable consequences doctrine or direct aiding and abetting.

This case is unlike *Garrison*, *supra*, 73 Cal.App.5th at pp. 745-746, in which the trial court's erroneous application of the substantial evidence standard of proof at a section 1170.95, subdivision (d)(3) hearing was harmless. There, the defendant was convicted of murder and he admitted he personally used a firearm in the commission of the murder. (*Garrison*, at p. 745.) The evidence established that only one person was the shooter and that the "only use of the handgun was to shoot [the victim]."

Because the defendant admitted that he personally used a firearm, the "*only* conclusion consistent with [his] admission" is that he was the "actual killer." (*Id.* at p. 747.) He was therefore "ineligible for relief as a matter of law." (*Id.* at p. 745.)

But here, the evidence established Richardson was the actual killer, and the prosecution argued Kness could be convicted of murder as either a direct aider and abettor or under the natural and probable consequences doctrine. The jury could have convicted Kness under either theory and it is unknown which theory it selected. Thus, we reverse the order denying relief and remand to allow a new evidentiary hearing pursuant to section 1172.6, subdivision (d)(3).[5]

## DISPOSITION

The order denying the petition for resentencing is reversed. The matter is remanded to the trial court for a new evidentiary hearing applying the correct standard of proof as set forth in this opinion. We express no opinion as to the ultimate resolution of the petition.

NOT TO BE PUBLISHED.


BALTODANO, J.


I concur:


GILBERT, P. J.

---

[5] Because we conclude application of the incorrect standard of proof was not harmless error, we do not address Kness's other contentions.

13

YEGAN, J., Dissenting:

I agree that there was "*Schell*" error and that such error may or may not be "harmless" within meaning of the California Constitution. (*People v. Schell* (2022) 84 Cal.App.5th 437, 442.) But the error here is harmless. At the very least, appellant was a direct aider and abettor who was a "major participant" who acted with "reckless indifference" to human life. This is the only conclusion that can reasonably be drawn. And it could be worse: even though the jury found that appellant did not personally use a knife, since two knives were used to murder the decedent, a reasonable inference is that appellant personally used one of them in the attack.

Appellant threatened to kill the decedent the night he was murdered, he participated in the robbery, he took the victim's money after he died, he supplied the knives used to kill the victim, he picked on a "particularly vulnerable" victim with health problems, he urinated on the victim after the murder, and he celebrated thereafter by drinking beer while watching a video. An appellate court, "to some extent" may weigh the evidence in conducting a harmless error analysis. (9 Witkin, Cal. Procedure (Mar. 2022 supp.) Appeals, § 439, p. 475.) The further hearing will not aid this appellant. The facts and circumstances dictate affirmance. It is not reasonably probable that appellant will obtain a more favorable result upon reversal.

NOT TO BE PUBLISHED.


YEGAN, J.


1

Dodie A. Harman, Judge

Superior Court County of San Luis Obispo

_____

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.